PILLSBURY WINTHROP SHAW PITTMAN LLP
Joseph D. Jean
Edward Flanders
Matthew D. Stockwell
1540 Broadway
New York, New York 10036

Attorneys for Plaintiff New York University

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
NEW YORK UNIVERSITY,

|  |  |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | |
| FACTORY MUTUAL INSURANCE COMPANY, | Civil Action No: 15-cv-8505 |
| Defendant. | |

-------------------------------------------------------------X

Plaintiff New York University ("NYU") files this Complaint against Defendant Factory Mutual Insurance Company ("FM") and, on information and belief, alleges the following:

**NATURE OF THE CASE**

1.      This is an insurance coverage dispute arising out of the events surrounding Superstorm Sandy ("Sandy").  During and after Sandy, NYU suffered catastrophic impacts at more than 100 locations.  Many of the impacted locations are part of the network commonly known as the NYU Langone Medical Center ("NYULMC").

2.      NYULMC is one of the world's premier networks for clinical care, biomedical research and medical education.  It attracts patients, physicians, professors and researchers from around the world and has a long history of groundbreaking developments that have advanced the frontiers of medicine and improved lives.

1

3.      NYU School of Medicine, an administrative unit of NYU and one component of NYULMC, was founded in 1841.  For almost 175 years, its faculty and alumni have consistently ranked among the worldwide leaders in medical research and education.  They have contributed to the development of public health as well as treatments and cures for ailments such as polio, cancer and tuberculosis that have afflicted people all over the planet.

4.      NYU Hospitals Center, a subsidiary of NYU and the other component of NYULMC, ranks among the nation's premier medical facilities and is highly regarded for its patient care.  Its facilities include locations throughout the New York metropolitan area.

5.      NYU purchased an insurance policy from FM to protect itself against events like Sandy.  Sadly, despite FM having issued a policy providing facial limits of $1,850,000,000 in coverage, FM has refused to honor the commitments it made to NYU in that policy.  As a result, NYU has been forced to bring this action to obtain the coverage FM promised, but refused, to provide.

## THE PARTIES

6.      Plaintiff NYU is a not-for-profit corporation formed under the laws of the State of New York with its principal place of business in New York.  Accordingly, NYU is a citizen of New York for jurisdictional purposes.

7.      Defendant FM is a company domiciled in the State of Rhode Island, being formed under the laws of the State of Rhode Island and having its principal place of business in Rhode Island.  Accordingly, FM is a citizen of Rhode Island for jurisdictional purposes.  FM is authorized by the Department of Financial Services to conduct the business of insurance in the State of New York.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  This action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     This Court has personal jurisdiction over FM because it is licensed to sell or write insurance in New York and, at all material times, has conducted substantial insurance business in the State of New York, including engaging in the business of selling insurance that covers policyholders and activities located in New York.  The insurance policy at issue in this action also provides that policy disputes are subject to "United States of America jurisdiction."

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because FM is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to NYU's claims occurred in this District.

## THE LOCATIONS

11.     NYU Hospitals Center and NYU School of Medicine conduct their work through numerous locations in the New York metropolitan area.  Several of these locations are situated in lower Manhattan between 30th and 34th Streets, and between First Avenue and FD Roosevelt Drive, and are listed in Schedule A of the policy as having the following addresses:

    a.     Alumni Hall – 500 First Avenue;

    b.     Joan and Joel Smilow Research Center – 522 First Avenue ("Smilow");

    c.     Schwartz Health Care Center – 530 First Avenue ("HCC");

    d.     Skirball Institute & Residential Tower – 540 First Avenue ("Skirball");

    e.     Medical Science Building – 550 First Avenue ("MSB");

    f.      Berg Institute – 550 First Avenue;

    g.      Cole Student Laboratories – 550 First Avenue;

    h.      Tisch Hospital – 560 First Avenue ("Tisch");

    i.      Millhauser Laboratory – 560 First Avenue;

    j.      Schwartz Lecture Halls – 401 E. 30th Street;

    k.      Rusk Institute of Rehabilitative Medicine – 400 E. 34th Street;

    l.      Perelman Building – 400 E. 34th Street; and

    m.     Rubin Hall – 435 E. 30th Street.

12.    The insurance policy at issue in this action insures these and numerous other NYU locations against Property Damage, Time Element and other losses.

## THE POLICY

13.    NYU purchased insurance from FM and its predecessors for approximately thirty years.  Throughout this time period, NYU increased its coverage to keep up with its continued growth as one of the world's leading institutions of higher learning and clinical care.

14.    FM modified the policies it issued to NYU over the years.  For example, in 2011, FM revamped the design, format and coverage terms in its policy to purportedly "further clarify and enhance coverage where possible."  FM explained that it made these changes "in the interest of contract certainty."

15.    The FM policy that covers NYU's Sandy loss is Policy No. LE650 ("Policy"). The Policy was in effect for the policy period of July 1, 2011 to July 1, 2012, and was subsequently extended through July 1, 2013.

16.    FM was the drafter of the Policy and all predecessor and subsequent policies.

17.     The Policy provides "all risk" coverage, meaning that it insures NYU for all loss except as specifically excluded or otherwise expressly limited.  FM bears the burden of proving the applicability of any exclusion or other limitation on coverage.

18.     The Policy provides Property Damage coverages and Time Element coverages. The Property Damage section of the Policy insures real property, personal property and physical loss or damage to property located at an "insured location."   The Policy's Time Element coverages, which are also known as business interruption coverages, include coverage for, among other things, lost revenue, earnings and extra expenses.

19.     The Policy also provides coverage enhancements including Time Element Coverage Extensions and Additional Coverages.

**THE FLOOD SUBLIMIT**

20.     FM issued the Policy with a flood sublimit that includes a $250,000,000 sublimit and a $40,000,000 sub-sublimit as follows:

| flood | USD250,000,000 in the **aggregate during any policy year**, but not to exceed a USD40,000,000 limit in the **aggregate during any policy year** for property located at the NYU Hospital Center and School of Medicine located at 550-580 First Avenue, 401 & 435 E 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY in the **aggregate during any policy year** |
|---|---|

21.     The flood sublimit applies only to the Policy's Property Damage coverages, and does not apply to the Policy's Time Element coverages.  The flood sublimit does not reference Time Element whereas other sublimits in the Policy explicitly include Time Element and Property Damage.  FM knew how to draft a sublimit to include Time Element but did not do so

with regard to the flood sublimit.  Thus, FM intended for the flood sublimit to apply only to Property Damage.

22.     To the extent the specific $40,000,000 flood sub-sublimit is even applicable, by its own express terms it does not apply to Smilow (522 First Avenue), HCC (530 First Avenue) and Skirball (540 First Avenue) because these properties are not located within the addresses listed in the Policy's $40,000,000 flood sub-sublimit.

23.     Additionally, by its express terms, the $40,000,000 flood sub-sublimit only applies to property located at the addresses of 550–580 First Avenue, 401 & 435 E. 30th Street, 317 & 400 E. 34th Street, and 3010 FD Roosevelt Drive, New York, New York.  In other words, the $40,000,000 flood sub-sublimit does not apply to Time Element.

## ADDITIONAL COVERAGES AND TIME ELEMENT COVERAGE EXTENSIONS

24.     In addition to the Policy's main coverage, the Policy also provides thirty-four separate Additional Coverages.  These Additional Coverages are just that—they provide "additional coverage" above and beyond what is covered by the Policy's main coverage.

25.     The Additional Coverages required additional premiums, which NYU paid.

26.     By way of example, the Additional Coverages include coverage for certain costs associated with debris removal; decontamination; emergency evacuation; temporary and expedited repairs; patient and tenant relocation; protection and preservation of property; risk improvement; and service interruption.

27.     The flood sublimit does not apply to the Additional Coverages.

28.     Coverage is further extended by Time Element Coverage Extensions that provide extra coverages for which NYU paid additional premiums.

29.     For example, the Time Element Coverage Extensions include, among other things, coverage for certain events such as when civil or military authorities prohibit access to property; ingress to or egress from property is physically prevented; services are interrupted; or action is taken to protect and preserve property. The Time Element Coverage Extensions also include coverage for certain costs associated with construction delays; reduction in sales; and interruption of research and development activities.

30.     As with the Time Element coverages and the Additional Coverages, the flood sublimit does not apply to the Policy's Time Element Coverage Extensions.

## ENSUING LOSS

31.     The Policy also provides coverage for ensuing loss as a result of faulty workmanship, material, construction or design.

32.     The flood sublimit does not apply to ensuing loss.

## SUPERSTORM SANDY

33.     On October 29, 2012, Sandy reached lower Manhattan, causing unprecedented damage, prevention of access to much of Manhattan due to that damage, implementation of civil authority orders, suspensions of operations, and loss of utility services to residences, businesses and other organizations.

34.     Sandy was the second costliest storm in U.S. history and the largest Atlantic hurricane on record. Sandy left hundreds of thousands of people homeless and affected twenty-four states, including the entire Eastern seaboard, from Florida to Maine. Leading up to and after its path through the United States, Sandy crossed eight different countries and killed hundreds of people.

35.     NYU went through exhaustive efforts to preserve and protect its property from damage as Sandy approached.  However, several unfortunate and discrete events occurred to cause NYU to suffer massive Property Damage and Time Element.

36.     For example, Consolidated Edison ("ConEd"), which provides electric service to New York City, experienced loss of electricity as a result of fires and an explosion that occurred at the 14th Street ConEd substation, as well as interruptions to the supply of other utility services such as steam, gas and communications.

37.     Like any medical research and hospital facility, NYU relied upon electric, steam, water, gas and communications services for its operations.  The multiple service interruptions themselves caused extensive Property Damage and Time Element.

38.     In addition, construction defects and faulty workmanship at several NYU locations resulted in losses falling within both the Property Damage coverages and the Time Element coverages afforded by the Policy.

39.     Prior to and including October 29, 2012, NYU was constructing a new building known as the "Energy Building."  The construction exposed the existing ventilation shaft for the generator in the MSB cellar ("MSB Areaway") to outside conditions including the construction site.  The construction site, and specifically the area near the MSB Areaway, was improperly and insufficiently protected by the contractor, which allowed approximately eleven million gallons of water to enter MSB that, but for the contractor's faulty workmanship, would not have otherwise entered MSB.  Additional defects and faulty workmanship in other locations allowed the water from MSB to spread and cause additional damage that would not have otherwise occurred but for the defects and faulty workmanship.

40.     Additionally, a foundation wall between MSB and HCC failed, resulting in significant water penetration into HCC that would not have occurred but for the defects and faulty workmanship, and the subsequent wall failure.

41.     Tisch was also damaged due to a defectively installed non-waterproof fuel oil pump junction box that was installed below grade, which caused the fuel pumps for the Tisch generator to fail, resulting in additional Property Damage and Time Element.

42.     NYU evacuated patients to other hospitals.  Hundreds of hospital personnel, including doctors and nurses, as well as residents and medical students, worked together to transport patients downstairs and into ambulances.  These included adult, pediatric and neonatal patients in critical and intensive care, as well as newborns requiring manual respirators.

43.     Immediately following Sandy, NYU took action toward emergency restoration of its property, including dewatering the buildings, debris removal, decontamination and disposal of hazardous materials, emergency repairs to roofs, fire alarms and other structures, and mold remediation.  This involved more than 300 vendors.  Restoration is still ongoing, including in certain NYU School of Medicine education areas that have not yet reopened.

44.     NYU Hospitals Center was forced to temporarily close inpatient and outpatient facilities.  While NYU Hospitals Center managed to reopen some facilities in approximately two months, inpatient and outpatient services continued to be disrupted for much longer.  The Emergency Department was closed for more than a year.  Both inpatient and outpatient services experienced significant decreases in revenue throughout the NYULMC network of locations.

45.     NYU also temporarily relocated many of its facilities in order to continue to provide first-class medical services to its patients and the community to the extent possible, including staging temporary MRI facilities and other radiological equipment in trailers, installing

a temporary boiler, steam operator, air compressors, generators and electric gear, and renting a mobile data center, kitchen, classrooms and other critical facilities, all at great expense.

46.     Notwithstanding these efforts, NYU lost substantial revenues from patient treatment services because, for example, those patients went to other medical facilities while NYU was impacted.  NYU itself provided these facilities with nurses and other trained personnel to provide continuation of care and to handle the increased patient population, again at great expense.

47.     NYU also lost significant research revenue and grants as a result of losing ongoing research, including investigations, data, study records, biospecimens, samples and antibodies that cannot be easily or quickly replaced.  The loss of researchers and facilities also contributed to the significant loss of revenue and grants.  Research at MSB, for example, was shut down for nearly a year.

48.     All of this Property Damage and Time Element is covered by the Policy, and the exact amount will be shown at trial.

## **FM'S WRONGFUL DISCLAIMER OF COVERAGE**

49.     The Policy was in effect at all relevant times.

50.     From the outset, FM engaged in wrongful acts to deny coverage and further its own interests above those of NYU, all in breach of its duties to NYU.

51.     For example, the Policy's $40,000,000 flood sub-sublimit, by its express terms, only applies to property located at the addresses of:

> 550-580 First Avenue, 401 & 435 E 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY

52.     Nonetheless, FM continually and wrongly asserted, and continues to assert, that the sub-sublimit applies more broadly and to more locations than expressly set forth in the sub-sublimit.

53.     For example, on December 19, 2012, roughly six weeks after Sandy, FM asserted that the $40,000,000 flood sub-sublimit had been exhausted by payments to NYU in the amount of $40,000,000 and stated that no additional coverage would be provided under the Policy for any of the Property Damage or Time Element suffered at locations encompassed by the addresses of 500–584 First Avenue, 401 & 435 E. 30th Street, 317 & 400 E. 34th Street, and 3010 FD Roosevelt Drive, New York, New York.

54.     Notwithstanding FM's wrongful position, NYU tried to work with FM and re-engage it in the adjustment process.  But FM, in breach of duties to NYU, consistently refused to reconsider its wrongful position that $40,000,000 was all it was going to pay for loss it unilaterally and wrongly deemed subject to the $40,000,000 flood sub-sublimit regardless of nature or location.

55.     Moreover, on May 6, 2013, FM asserted, in breach of the Policy, that all of the locations at NYU Hospitals Center and NYU School of Medicine between 500–584 First Avenue, 401 & 435 E. 30th Street, 317 & 400 E. 34th Street, and 3010 FD Roosevelt Drive, New York, New York were subject to the $40,000,000 flood sub-sublimit, and stated that there was no "need for NYU to submit information concerning its ongoing losses or for FM Global to measure such losses in excess of the $40 million flood sublimit."

56.     FM took this position despite the $40,000,000 flood sub-sublimit expressly only applying to: "550–580 First Avenue, 401 & 435 E. 30th Street, 317 & 400 E. 34th Street, and 3010 FD Roosevelt Drive, New York, NY."

57.     In further breach of the Policy, on June 13, 2013, FM stated that it would only consider NYU's service interruption claim for locations other than "all buildings on the superblock bounded on the east and west by FDR Drive and First Avenue and on the south and north by 30th and 34th streets [sic]."  This meant, for example, that FM would not consider NYU's Property Damage and Time Element claims for Smilow (522 First Avenue), HCC (530 First Avenue) and Skirball (540 First Avenue), none of which are included in the Policy's $40,000,000 flood sub-sublimit.

58.     Despite FM's refusal to consider all of the impacts NYU suffered, in June 2013, NYU submitted its preliminary claim under the Policy's Property Damage coverages for $785,588,798 and its preliminary claim under the Policy's Time Element coverages in the amount of $681,211,380, for a total claim of $1,466,800,178.

59.     In further breach of the Policy, FM continued to deny coverage and refused to even adjust or measure NYU's losses at any location encompassed by the addresses of 500–584 First Avenue, 401 & 435 E. 30th Street, 317 & 400 E. 34th Street, and 3010 FD Roosevelt Drive, New York, New York, with the exception of 545 First Avenue.

60.     On July 13, 2013, FM again rejected NYU's claim for service interruption as a result of damage that occurred to ConEd's equipment, improperly asserting that it was included in the $40,000,000 flood sub-sublimit and was already paid.

61.     FM continues to refuse to provide substantial Policy benefits, all in breach of the Policy.

62.     NYU has complied with all Policy provisions to the extent required by law and has repeatedly stated its disagreement with FM's position.  NYU has also submitted its claim despite FM's coverage disclaimer and FM's refusal to consider it.

63.     FM's refusal to pay is wrongful, and constitutes a breach of the Policy.

**FM THRIVES AT THE EXPENSE OF NYU'S SUFFERING**

64.     While Sandy caused NYU to suffer one of the worst years in its long history, FM claims that it had "one of its best years" in 2012 "despite the impact of Superstorm Sandy."  FM followed its banner 2012 year with what it claims was a "very successful" 2013.  FM reported an increase of $1,062,800,000 in earnings from 2011 to 2013, moving from a $41,500,000 net loss to a $1,021,300,000 net gain.

65.     These financial successes were at the expense of NYU.  FM did not pay NYU what it was owed under the Policy.  Instead, FM used the amounts it wrongfully withheld from NYU to enhance its own performance.

66.     Ultimately, the Federal Emergency Management Agency ("FEMA") stepped in to provide NYU with some of the funding FM refused to provide.  For example, FEMA supported recovery of NYU's vital infrastructure so that NYU could continue to provide critical services to the tri-state area.  To date, FEMA provided NYU with a total grant of $1,130,072,880.

67.     As an insurer, FM is fully aware that events like Sandy can have catastrophic consequences for its insureds.  Because FM actively markets to not-for-profit insureds like NYU, it is also fully aware that impacts to its insureds can also affect the public, particularly where, as here, NYU was unable to restore its operations as quickly as it should have had FM paid NYU's covered Property Damage and Time Element.  For example, had FM not improperly denied NYU's Property Damage claim, NYU would not have needed to rely so heavily upon FEMA.

68.     Ironically, FM claims to help its insureds build resilience by helping organizations protect themselves before, during and after a disaster.  And even though FM specifically marketed and sold risk improvement coverage (which covers extra costs incurred to rebuild or

repair damaged property in accordance with FM's loss prevention recommendations) as an additional endorsement to help policyholders like NYU prevent future claims, FM has inexplicably refused to make any payment under that Additional Coverage.

69.   NYU paid all Policy premiums, and satisfied all conditions precedent to bringing this action to the extent required by law.

70.   FM has, however, wrongfully and in breach of the Policy, refused to comply with its obligations under the Policy.

## AS AND FOR A FIRST CAUSE OF ACTION

(Declaratory Relief – Property not encompassed by the addresses
550–580 First Avenue, 401 & 435 E. 30th Street, 317 & 400 E. 34th Street, and 3010 FD
Roosevelt Drive, New York, New York is not subject to the $40,000,000 flood sub-sublimit)

71.   NYU repeats and re-alleges the above allegations in paragraphs "1" through "70" with the same force and effect as if repeated in their entirety.

72.   FM agreed to indemnify NYU under the Property Damage coverages and Time Element coverages for loss incurred as a result of all risks not specifically excluded from the Policy.

73.   FM issued the Policy with a flood sublimit that includes a $250,000,000 sublimit and a $40,000,000 sub-sublimit as follows:

| flood | USD250,000,000 in the **aggregate during any policy year**, but not to exceed a USD40,000,000 limit in the **aggregate during any policy year** for property located at the NYU Hospital Center and School of Medicine located at 550-580 First Avenue, 401 & 435 E 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY in the **aggregate during any policy year** |
|---|---|

74. To the extent the specific $40,000,000 flood sub-sublimit is even applicable, by its own express terms it does not apply to property located outside of the specified addresses. Instead, the $40,000,000 flood sub-sublimit applies only to property located at "550-580 First Avenue, 401 & 435 E [sic] 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY."

75. Despite NYU's claim for $1,466,800,178 in losses, FM has denied NYU's claim and wrongly asserted that NYU is entitled only to $40,000,000 for all losses involving properties located between 500–584 First Ave., 401 & 435 E. 30th Street, 317 & 400 E. 34th Street, and 3010 FD Roosevelt Drive, New York, New York, except for 545 First Avenue.

76. FM wrongly takes this position despite the $40,000,000 flood sub-sublimit expressly applying only to "550-580 First Avenue, 401 & 435 E [sic] 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY."

77. An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the Policy, including FM's obligation and refusal to indemnify NYU under the Property Damage coverages and Time Element coverages in accordance with the Policy.

78. This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment. The issuance of declaratory relief and subsequent compliance by FM should be sufficient to resolve the existing controversy between NYU and FM in this cause of action.

79. Pursuant to 28 U.S.C. § 2201, NYU seeks a declaratory judgment that the Policy's $40,000,000 flood sub-sublimit does not apply to property located outside of the specified addresses but instead only applies to property located at "550-580 First Avenue, 401 &

15

435 E [sic] 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY."

## AS AND FOR A SECOND CAUSE OF ACTION

(Declaratory Relief – The $250,000,000 flood sublimit does not apply to Time Element)

80.     NYU repeats and re-alleges the above allegations in paragraphs "1" through "70" with the same force and effect as if repeated in their entirety.

81.     FM agreed to indemnify NYU under the Time Element coverages for loss incurred as a result of all risks not specifically excluded from the Policy.

82.     FM has improperly taken the position that the $250,000,000 flood sublimit applies to NYU's claim under the Policy's Time Element coverages.

83.     However, the $250,000,000 flood sublimit does not apply to NYU's claim under the Time Element coverages afforded by the Policy.

84.     In fact, the flood sublimit does not reference Time Element whereas other sublimits in the Policy explicitly include Time Element and Property Damage.  FM knew how to draft a sublimit to include Time Element but did not do so with regard to the flood sublimit.  Thus, FM intended for the flood sublimit to apply only to Property Damage.

85.     FM's coverage position will result in a devastating shortfall to NYU in an amount to be determined at trial.

86.     An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the Policy, including FM's obligation and refusal to indemnify NYU for its damages under the Time Element coverages afforded by the Policy.

87.     This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.  The issuance of declaratory relief and subsequent compliance by FM

should be sufficient to resolve the existing controversy between NYU and FM in this cause of action.

88.    Pursuant to 28 U.S.C. § 2201, NYU seeks a declaratory judgment that the Policy's $250,000,000 flood sublimit does not apply to Time Element.

**<u>AS AND FOR A THIRD CAUSE OF ACTION</u>**

(Declaratory Relief – The $40,000,000 flood sub-sublimit does not apply to Time Element)

89.    NYU repeats and re-alleges the above allegations in paragraphs "1" through "70" with the same force and effect as if repeated in their entirety.

90.    FM agreed to indemnify NYU under the Time Element coverages for loss incurred as a result of all risks not specifically excluded from the Policy.

91.    To the extent the $40,000,000 flood sub-sublimit even applies, FM has improperly taken the position that the $40,000,000 flood sub-sublimit applies to NYU's Time Element claim.

92.    However, the $40,000,000 flood sub-sublimit does not apply to NYU's Time Element claim.  Indeed, in pertinent part, the $40,000,000 flood sub-sublimit specifically only applies to "property located at the NYU Hospital [sic] Center and School of Medicine located at 550-580 First Avenue, 401 & 435 E [sic] 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY."

93.    FM's coverage position will result in a devastating shortfall to NYU in an amount to be determined at trial.

94.    An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the Policy, including FM's obligation and refusal to indemnify NYU for its damages under the Time Element coverages afforded by the Policy.

95.     This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.  The issuance of declaratory relief and subsequent compliance by FM should be sufficient to resolve the existing controversy between NYU and FM in this cause of action.

96.     Pursuant to 28 U.S.C. § 2201, NYU seeks a declaratory judgment that the Policy's $40,000,000 flood sub-sublimit does not apply to Time Element.

## AS AND FOR A FOURTH CAUSE OF ACTION

(Declaratory Relief – The flood sublimit does not apply to
Additional Coverages and Time Element Coverage Extensions)

97.     NYU repeats and re-alleges the above allegations in paragraphs "1" through "70" with the same force and effect as if repeated in their entirety.

98.     FM agreed to indemnify NYU for loss incurred as a result of all risks not specifically excluded from the Policy.

99.      FM has improperly taken the position that the flood sublimit applies to the Policy's Additional Coverages and Time Element Coverage Extensions that NYU purchased for an additional premium.

100.    However, the flood sublimit does not apply to the Additional Coverages and Time Element Coverage Extensions because the Additional Coverages and Time Element Coverage Extensions broaden the coverage afforded by the Policy and provide additional coverage to the main policy.

101.    FM's coverage position will result in a devastating shortfall to NYU in an amount to be determined at trial.

102.    An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the Policy, including FM's obligation and refusal to

indemnify NYU for its Property Damage and Time Element and related damages and losses in accordance with the Policy.

103.    This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.  The issuance of declaratory relief and subsequent compliance by FM should be sufficient to resolve the existing controversy between NYU and FM in this cause of action.

104.    Pursuant to 28 U.S.C. § 2201, NYU seeks a declaratory judgment that the Policy's flood sublimit does not apply to the Policy's Additional Coverages and Time Element Coverage Extensions.

### AS AND FOR A FIFTH CAUSE OF ACTION

(Declaratory Relief – For construction of the Policy's definition of "flood")

105.    NYU repeats and re-alleges the above allegations in paragraphs "1" through "70" with the same force and effect as if repeated in their entirety.

106.    The Policy defines "flood" as:

> flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not; or sewer back-up resulting from any of the foregoing; regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss. Physical loss or damage from **flood** associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be **flood** within the terms of this Policy.  However, physical loss or damage by fire, explosion or sprinkler leakage resulting from **flood** is not considered to be loss by **flood** within the terms and conditions of this Policy.

107.    FM wrongly took the self-serving position that application of this definition subjected almost all of NYU's claim to the flood sublimit.

108.    FM's self-serving and overly broad interpretation of how the flood definition applies is so onerous that it would render the definition unconscionable and unenforceable.  When properly construed and applied, the flood definition does not limit NYU's claim in the manner FM contends.

109.    FM's coverage position will result in a devastating shortfall to NYU in an amount to be determined at trial.

110.    An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the Policy, including the scope of this provision in connection with NYU's claim and the Policy.

111.    This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.  The issuance of declaratory relief and subsequent compliance by FM should be sufficient to resolve the existing controversy between NYU and FM in this cause of action.

112.    Pursuant to 28 U.S.C. § 2201, NYU seeks a declaratory judgment construing the scope of the definition of "flood."

## AS AND FOR A SIXTH CAUSE OF ACTION

(Breach of Contract)

113.    NYU repeats and re-alleges the above allegations in paragraphs "1" through "112" with the same force and effect as if repeated in their entirety.

114.    The Policy issued to NYU constitutes a valid and enforceable contract.

115.    FM wrongfully denied coverage for most of NYU's Sandy claim.  That claim included Property Damage and Time Element, as well as Additional Coverages and Time Element Coverage Extensions.

116.    In addition to its explicit terms, the Policy implies a duty for FM to deal fairly with NYU and to do nothing to injure, frustrate or interfere with NYU's rights to receive the benefits and peace of mind it was promised under the Policy.

117.    At the time FM issued the Policy, the parties reasonably contemplated damages to NYU should FM breach its duties and compel NYU to file suit.

118.    FM has improperly and without reasonable basis refused to pay benefits due and owing under the Policy despite a clear duty and obligation to do so under the Policy and the law.

119.    FM has violated its implied duties under the Policy by, among other things:

     a.  willfully interpreting the language in the Policy and factual circumstances to resolve ambiguities and uncertainties against NYU and in favor of its own interests;

     b.  failing to honestly and adequately evaluate and investigate NYU's claim;

     c.  arbitrarily and irrationally rendering its determinations about coverage;

     d.  flip-flopping in its coverage positions;

     e.  pretending to assist NYU in its recovery efforts while instead building its case to deny coverage; and

     f.  forcing NYU to institute litigation to recover amounts due under the Policy.

120.    NYU has made all premium payments to FM and fully performed all obligations it may have in accordance with the Policy and to the extent required by law.

121.    FM is obligated to indemnify NYU for the full amount of its covered Property Damage, Time Element, Additional Coverages and Time Element Coverage Extensions, as well as other covered costs, loss or damages.

122.    FM has refused to comply with its obligations under the Policy.

123.   By reason of FM's failure and refusal to indemnify NYU for the full amount of its covered Property Damage, Time Element, Additional Coverages and Time Element Coverage Extensions, as well as other covered costs, loss or damages, FM breached the Policy.

124.   By reason of FM's failures to fulfill its implied obligations under the Policy, FM breached the Policy.

125.   As a direct and proximate result of FM's breaches, NYU has suffered monetary damages, including consequential damages, in an amount to be determined at trial.

## JURY DEMAND

NYU demands a trial by jury for all issues so triable.

## RELIEF SOUGHT

WHEREFORE, Plaintiff NYU demands judgment against Defendant FM as follows:

a.   On the First Count, for a declaratory judgment that the Policy's $40,000,000 flood sub-sublimit does not apply to locations outside of the specified addresses but instead only applies to "550-580 First Avenue, 401 & 435 E [sic] 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY";

b.   On the Second Count, for a declaratory judgment that the $250,000,000 flood sublimit does not apply to Time Element;

c.   On the Third Count, for a declaratory judgment that the $40,000,000 flood sub-sublimit does not apply to Time Element;

d.   On the Fourth Count, for a declaratory judgment that the flood sublimit does not apply to Additional Coverages and Time Element Extensions;

e.   On the Fifth Count, for a declaratory judgment construing the Policy's definition of "flood";

f.   On the Sixth Count, for amounts to be shown at trial together with interest, costs and disbursements of this action; and

g.   For such other and further relief as the Court deems just and proper.

DATED:   New York, New York
         October 28, 2015

PILLSBURY WINTHROP SHAW PITTMAN LLP


BY:   __/s/ Joseph D. Jean_____
      **Joseph D. Jean**
      **Edward Flanders**
      **Matthew D. Stockwell**
      1540 Broadway
      New York, New York 10036
      (212) 858-1000 (telephone)
      (212) 858-1500 (facsimile)
      joseph.jean@pillsburylaw.com
      edward.flanders@pillsburylaw.com
      matthew.stockwell@pillsburylaw.com

      Attorneys for Plaintiff New York University